UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES N. BELLATONI, JR., et al.,<br>　　　Plaintiffs,<br><br>　　　v.<br><br>EDWARD M. LAMONT, et al.,<br>　　　Defendants. | No. 3:22-cv-238 (SRU) |

### ORDER ON MOTION FOR RECONSIDERATION

This case concerns the constitutionality of expired executive orders issued by Connecticut Governor Edward Lamont ("Governor Lamont") in the wake of the coronavirus ("COVID-19") pandemic. In March 2022, the plaintiffs—public school employees situated throughout the state of Connecticut—commenced this action against Governor Lamont, and the Connecticut State Public Health Commissioner, Manisha Juthani (collectively, the "defendants") claiming that Executive Order 13D, as amended by Executive Order 13G, violates the plaintiffs' right to bodily autonomy, medical privacy and equal protection. *See generally* Am. Compl., Doc. No. 9. For those alleged violations, the plaintiffs sought declaratory and monetary relief. The defendants moved to dismiss the complaint in its entirety. Doc. No. 16. At oral argument on March 22, 2023, I ruled on the record, granting the defendants' motion to dismiss. *See* Doc. No. 40. Specifically, I held that the plaintiffs' claims for declaratory relief were moot, and the claim for monetary damages pursuant to 42 U.S.C. § 1983 was barred by qualified immunity. The plaintiffs now move for reconsideration of one aspect of the ruling: specifically, my holding that qualified immunity barred the plaintiffs' claim for monetary relief. For the reasons that follow, the motion for reconsideration, doc. no. 42, is **denied**.

I.   **STANDARD OF REVIEW**

In this Circuit, a litigant who seeks reconsideration of an order or judgment pursuant to Rule 59(e) faces a difficult hurdle. Motions for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Courts have granted motions for reconsideration in limited circumstances, including: (1) where there has been an intervening change of controlling law; (2) where new evidence has become available; or (3) where there is a need to correct a clear error or prevent manifest injustice. *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citing 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4478). On the other hand, a motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (cleaned up).

II.  **DISCUSSION**

   A.   <u>Background</u>

In response to the COVID-19 pandemic, on March 10, 2020, Governor Lamont declared public health and civil preparedness emergencies throughout the State of Connecticut, pursuant to General Statutes §§ 19a-131a and 28-9. Thereafter, he promulgated a series of executive orders to contain and mitigate the spread of COVID-19.

Relevant here, Governor Lamont issued Executive Order No. 13G ("EO 13G") on

September 10, 2021, and invoked his emergency authority under both Connecticut General Statutes §§ 28-9 and 19a-131a.[1] EO 13G, which replaced Executive Order 13D[2], provided that "on and after September 27, 2021, school boards and childcare centers must require 'any covered worker' to be vaccinated against COVID-19." *See* Exec. Order 13G § 3(c)(i). As an alternative to vaccination, EO 13G also permitted covered workers to submit to and provide proof of weekly testing in accordance with section 4(b). *Id.* at § 3(c)(ii). The term "covered worker" is defined as "all employees, both full and part-time, contract workers, providers, assistants, substitutes, and other individuals working in a public or non-public pre-K to grade 12 school system or childcare facility …." *Id.* at § 2(h).

By its own terms, EO 13G, as applied to the plaintiffs, expired on February 15, 2022.[3] *See* Exec. Order 14A. On that date, Governor Lamont chose not to extend the Order.[4] As a result, Governor Lamont's emergency powers under Connecticut General Statutes §§ 28-9 and 19a-131a expired, which prohibited him from extending EO 13G for any longer period. *Id.* Thus, EO 13G expired over a year ago. No similar order has been imposed since.

B.  Timeliness

As an initial matter, the plaintiffs' motion should be denied because it is untimely. Local Rule of Civil Procedure 7(c) permits a party to file a motion for reconsideration within seven

---

[1] All the declarations and executive orders issued by Governor Lamont related to the COVID-19 pandemic are accessible on the website for the State of Connecticut, of which the Court takes judicial notice. *See generally* CT.gov, Emergency Orders Issued by the Governor & State Agencies, https://portal.ct.gov/Coronavirus/Pages/Emergency-Orders-issued-by-the-Governor-and-State-Agencies (last visited April 26, 2023).
[2] From this point on, I will refer only to Executive Order 13G ("EO 13G") because that executive order supersedes Executive Order 13D.
[3] Initially, EO 13G was set to expire on September 30, 2021. *See* Exec. Order 13G. Governor Lamont subsequently extended the duration of EO 13G to February 15, 2022. *See* Exec. Order 14A.
[4] *See* Update Regarding Executive Order 15G – Vaccination of Covered Workers, available at https://portal.ct.gov/-/media/SDE/Digest/2021-22/Update-on-EO-13G---Vaccination-of-Covered-Workers021522.pdf (last visited April 26, 2023).

3

days of the filing of the decision from which the party seeks relief. D. Conn. L. R. Civ. P. 7(c). I granted the defendants' motion to dismiss on March 22, 2023. Doc. No. 40. It was not until April 18, 2023, nearly a month later, that the plaintiffs filed their motion for reconsideration. The motion for reconsideration makes no mention of this missed deadline, nor was a motion for an extension of time filed.

Courts in this Circuit routinely deny motions for reconsideration due to a litigant's failure to comply with the timeliness provision of Rule 7.1(g). *See, e.g., U.S. Bank Tr., N.A. for Wells Fargo Asset Sec. Corp. Mortg. Pass-Through Certificates Series 2005-AR2, Successor Wachovia Bank, N.A. v. Walbert*, 2017 WL 5153169, at *2 (D. Conn. Nov. 7, 2017) ("As Defendant's motion for reconsideration is late, it will be denied."); *Lopez v. Smiley*, 375 F. Supp. 2d 19, 21 (D. Conn. 2005) ("[A] failure to timely file a motion for reconsideration constitutes sufficient grounds for denying the motion."); *De Deo v. Brown*, 2009 WL 3644253, at *1 (N.D.N.Y. Oct. 28, 2009) (relying on, *inter alia*, Rule 7.1(g) of the local rules of practice in concluding that the plaintiff's motion for reconsideration "is … untimely and may properly be denied on that basis"). Because the motion for reconsideration is untimely, it is denied.

C. Qualified Immunity

Even assuming that the motion was timely filed, the plaintiffs fail to meet the "strict" standard for reconsideration. Importantly, the plaintiffs do not point to any controlling decisions or data that I overlooked in my ruling. Nor have the plaintiffs presented any intervening change of controlling law, or the availability of new evidence. Instead, the plaintiffs posit that I misapplied the qualified immunity standard; arguments that were raised and rejected at oral argument. And as I stated on the record, it is the plaintiffs who are mistaken about the standards governing qualified immunity.

To reiterate, courts assess qualified immunity through a two-part inquiry: (1) "whether the facts, viewed in the light most favorable to the plaintiff, show that [a government] official's conduct violated a constitutional right"; and (2) "whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011) (cleaned up). Because the plaintiffs' arguments for reconsideration rest on the second prong, I focus my analysis there.

The first step in determining whether a right is clearly established is to define the right in question. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *Yorzinski v. Imbert*, 39 F. Supp. 3d 218, 225 (D. Conn. 2014). It bears emphasizing at the outset that this is not a *true* vaccine mandate case. To the contrary, EO 13G afforded individuals options: (1) vaccinate; (2) test weekly; **or** (3) terminate their employment. It is unsurprising, then, that none of the fifteen plaintiffs is even alleged to have received the vaccine. As such, the plaintiffs' recitation of the purported right— that is, to be free of compulsory vaccinations that allegedly do not prevent disease— is plainly inapplicable. *See, e.g., Smith v. Biden*, 2021 WL 5195688, at *8 (D.N.J. Nov. 8, 2021) (holding that although plaintiffs "are undeniably being presented with a difficult choice– comply with the vaccine mandate or risk losing their employment," they nonetheless are "presented with a choice and are not being coerced to give up a fundamental right since there is no fundamental right to refuse vaccination"). A better description of the claimed right at issue is the right to work unvaccinated at a public institution during a pandemic. Assuming that is a right, a conclusion I entertain for purposes of this analysis, the next question is whether that right has been clearly established.

Neither the Supreme Court nor the Second Circuit has ever clearly established the right to work unvaccinated at a public institution during a pandemic. Moreover, the plaintiffs do not

point to any precedent that would have put Governor Lamont on notice that he was violating the plaintiffs' constitutional rights by mandating that school boards require their employees to take an FDA-approved vaccine or submit to weekly testing or face termination.[5] Unable to refute that point, the plaintiffs instead argue that existing law established that Governor Lamont's actions violated federal law. I disagree.

The plaintiffs rely heavily upon *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905). But that decision is curious given that *Jacobson* contradicts their position. In *Jacobson*, the Supreme Court evaluated the constitutionality of a Massachusetts law requiring vaccination against smallpox. *Id.* Much like plaintiffs here, the plaintiff in that case challenged the mandate, arguing that "a compulsory vaccination law is unreasonable, arbitrary, and oppressive, and, therefore, hostile to the inherent right of every freeman to care for his own body and health in such way as to him seems best…." *Id.* at 26. The Supreme Court rejected the argument, validating the mandate as a valid exercise of a state's police power. *Id.* at 35.

Although decided over a century ago, *Jacobson* remains good law. Indeed, "for over 100 years [*Jacobson*] has stood firmly for the proposition that the urgent public health needs of the community can outweigh the rights of an individual to refuse vaccination." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 294 n.35 (2d Cir. 2021). In the context of the COVID-19 pandemic, courts consistently have applied *Jacobson* to hold that mandatory vaccine policies

---

[5] The plaintiffs make much of the fact that they alleged that Governor Lamont "knew" that vaccines were ineffective at preventing the transmission of the COVID-19 virus, and that I am required to accept that allegation as true when deciding a motion to dismiss. But for cases like this, where intent is not an element of the alleged constitutional violation, "the qualified immunity doctrine focuses only on whether the government official's actions were objectively reasonable in light of clearly established law, without regard for possible subjective malice." *Locurto v. Safir*, 264 F.3d 154, 169 (2d Cir. 2001); *see also Crawford-El v. Britton*, 523 U.S. 574, 588 (1998) ("Thus, although evidence of improper motive is irrelevant on the issue of qualified immunity, it may be an essential component of the plaintiff's affirmative case.").

withstand constitutional scrutiny. *See, e.g., Valdez v. Lujan Grisham*, 2022 WL 3577112, at *11 (D.N.M. Aug. 19, 2022) (collecting cases); *see also Phillips v. City of New York*, 775 F.3d 538, 542 (2d Cir. 2015) ("Plaintiffs argue that a growing body of scientific evidence demonstrates that vaccines cause more harm to society than good, but as *Jacobson* makes clear, that is a determination for the [policymaker], not the individual objectors."). Against that backdrop, it is hard to see how *Jacobson* would have plainly established that Governor Lamont's actions were unlawful. In actuality, *Jacobson* provides support that it was objectively reasonable for Governor Lamont to believe his acts were constitutional at the time of the challenged action.

The plaintiffs also rely on Connecticut General Statutes § 19a-131. The statute provides in part:

> In the event of a public health emergency declared by the Governor under section 19a-131a, the commissioner, as authorized by the Governor pursuant to section 19a-131a, may issue an order for the vaccination of such individuals or individuals present within a geographic area as the commissioner deems reasonable and necessary in order to prevent the introduction or arrest the progress of the communicable disease or contamination that caused the declaration of such public health emergency.

Conn. Gen. Stat. § 19a-131e(a). According to the plaintiffs, "any objectively reasonable officer [reading the statute] would have quickly concluded that he did not have the legal authority to issue the [v]accine [m]andate." Pls. Mot. for Reconsideration, Doc. No. 42, at 11. Several reasons undergird the incorrectness of the plaintiffs' position.

Nothing about the language of the statute makes apparent the alleged unlawfulness of Governor Lamont's actions. Indeed, the plaintiffs do not, nor can they, identify precise language used in the statute that would have plainly prohibited Governor Lamont's actions. To be clear, "an official loses qualified immunity only for violating clearly established law," *Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017), and "'in the light of pre-existing law,' the unlawfulness of the

7

officer's conduct 'must be apparent.'" *Id.* at 151 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Moreover, even if Governor Lamont did violate state law, that is not the relevant inquiry for purposes of qualified immunity. As the Second Circuit has repeatedly made explicit, "a state statute does not serve as 'clearly established law' for purposes of qualified immunity." *Tooly v. Schwaller*, 919 F.3d 165, 172 (2d Cir. 2019); *see also Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) ("A defense of qualified immunity is not displaced by a violation of state law requirements."). "To determine whether a violation of state law overcomes federal qualified immunity, then, the court must determine whether the conduct that violated the state statute also violates clearly established federal law, and this is a distinct and separate inquiry." *Tooly*, 919 F.3d at 172. The plaintiffs wholly miss this point, resting their entire argument on Governor Lamont's alleged violation of Connecticut General Statutes § 19a-131. To defeat qualified immunity, however, the plaintiffs were required to show that in violating of Connecticut General Statutes § 19a-131, Governor Lamont also violated clearly established federal due process law. That standard has not been met here.

Finally, even if Governor Lamont made a mistake of law, his actions are protected. "Qualified immunity … shields government officials from liability when they make reasonable mistakes about the legality of their actions, and applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Sudler v. City of New York*, 689 F.3d 159, 174 (2d Cir. 2012) (cleaned up); *see also DiBlasio v. Novello*, 413 F. App'x 352, 356 (2d Cir. 2011) ("The very purpose of qualified immunity is to protect officials when their jobs require them to make difficult on-the-job decisions. This is especially true when officials are forced to act quickly, such as in the context

8

of a public health emergency.") (cleaned up). Regarding COVID-19 mitigation measures, courts across the country have repeatedly held government officials to be immune from suit in their personal capacities. *See generally Bastian v. Lamont*, 2022 WL 2477863, at *7 (D. Conn. July 6, 2022) (granting qualified immunity, dismissing the plaintiffs' complaint and finding that "it is implausible that every reasonable official would have understood issuing or enforcing public health policies [during the COVID-19 pandemic] violated the plaintiffs' rights") (cleaned up); *Northland Baptist Church of St. Paul v. Walz*, 530 F. Supp. 3d 790, 807–08 (D. Minn. 2021) (holding Governor Tim Walz was entitled to qualified immunity in his individual capacity on a motion to dismiss following the issuance of executive orders in response to COVID-19); *South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring in the judgment) ("When [state] officials undertake to act in areas fraught with medical and scientific uncertainties, their latitude must be especially broad."). I reach the same conclusion here. The motion for reconsideration, had it been timely, would have been denied on the merits.

### III.     CONCLUSION

For the foregoing reasons, the plaintiffs did not timely move for reconsideration and have not set forth a basis to reconsider my ruling on the motion to dismiss. Accordingly, the plaintiffs' the motion for reconsideration, doc. no. 42, is **denied**.

So ordered.

Dated at Bridgeport, Connecticut, this 26th day of April 2023.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge